## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .       )

**JAROSLAV HORNOF, et al.**                                    )

                                                     )

        *Plaintiffs,*                                        )

                                                       )

**v.**                                                        )        **CASE NO.:  2:19-cv-00198-JDL**

                                                       )

**UNITED STATES OF AMERICA, et al.**                          )

                                                      )

        *Defendants.*                                       )

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .       )

## PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF FACTS AND PLAINTIFFS' ADDITIONAL STATEMENT OF MATERIAL FACTS

### I.      RESPONSES

NOW COME plaintiffs, Jaroslav Hornof, Damir Kordic and Lukas Zak, by and through their counsel, and pursuant to Local Rule 56(c) of the Rules of United States District Court for the District of Maine, respond to Defendant's Statement of Facts as follows:

Plaintiffs generally object to Defendant's tactic of enticing them to enter into a Joint Stipulation of Facts consisting of 94 numbered paragraphs, ostensibly to streamline the summary judgment process, and then filing a Statement of Facts containing an *additional* 133 numbered paragraphs. Such prolixity violates both the letter and spirit of the Court's procedural order of May 6, 2022 (ECF No. 150) (limiting Defendant to 200 paragraphs but encouraging the parties to file stipulations "that could serve to streamline the parties' statements of material fact"). For this reason, in addition to the specific objections set forth below, Plaintiffs request that all or part of Defendant's Statement of Facts be stricken.

Any allegations admitted or deemed admitted herein are admitted solely for purposes of summary judgment.

1.      **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the

ground that it is based on a document that has not been authenticated and for which no

foundation has been laid.   Without competent testimony identifying and authenticating the

document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials

must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).[1]  "Unsworn

statements are not evidentiary in nature." *Fremaint v. Ford Motor Co.,* 258 F. Supp. 2d 24, 28

(D.P.R. 2003).

2.      Admitted.

3.      **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the

ground that it is based on a document that has not been authenticated and for which no

foundation has been laid.  Without competent testimony identifying and authenticating the

document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.  To

the extent this statement is not stricken, the Plaintiffs respond as follows:

Denied.  Hornof's contract was modified by an oral agreement with his employer that he

could terminate his contract if he needed to come home earlier.  Declaration of Jaroslav Hornof

("Hornof Aff."), ¶ 7; Deposition of J. Hornof ("Hornof Dep.) at 69-70 (Stipulated Record ("SR")

Exhibit 140, Page ID# 6507-6508).

4.      **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the

ground that it is based on a document that has not been authenticated and for which no

---

[1] Defendant has cited to material in the Stipulated Record.  However, it is expressly stated therein: "By submitting this Record, the parties do not stipulate that each exhibit is admissible in this matter, either for purposes of Summary Judgment or otherwise, or will be or properly should be referred to in any Statement of Material Facts.  The parties expressly reserve the right to object to the admissibility or use of any exhibit contained herein."  (ECF No. 154 at 1).  Prior to the filing of the Stipulated Record, Defendant's counsel took the position that "neither party can prevent the opposing party from submitting any particular exhibit" in the Stipulated Record.  "The opposing party can, however, object to the admissibility after the record is assembled and filed."

foundation has been laid.   Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.

5.      Admitted**.**

6.      Admitted.

7.      Admitted.

8.      **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.   Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

9.      Admitted.

10.     Qualified. The contract was subject to time adjustments. Deposition of D. Kordic ("Kordic Dep.") at 13 (ECF No. 154-41, PageID# 6576)

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible. *See* F. R. Evid. 901.

Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

15.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible. *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay. Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

16.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on an order in a case to which Plaintiffs were not a party and which therefore is not admissible against them. Moreover, in this order on the criminal defendants' motion to dismiss, the court was simply echoing the allegations in the indictment.  *See* Stipulated Record (SR), ECF No. 154 at 60, Page ID #4719.

17.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on an order in a case to which Plaintiffs were not a party and which therefore is not admissible against them. Moreover, in this order on the criminal defendants' motion to dismiss, the court was simply echoing the allegations in the indictment.  *See* Stipulated Record (SR), ECF No. 154 at 60, Page ID #4719.  It is also based on a statement, not under oath, prepared by the government in the criminal case- to which, again, none of the Plaintiffs was a party.  It is not admissible in this action.

18.     **This statement should be stricken** because it is a statement of law, not fact, and an inaccurate statement at that. The cited statutory provision, 33 U. S. C. § 1908(a), says nothing of the sort.

19.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible. *See* F. R. Evid. 901.  It is also based on a statement, not under oath, prepared by the government in the criminal case- to which, again, none of the Plaintiffs was a party. It is not admissible in this action.  Further, the use of the term *illegally* entails a legal conclusion. To the extent this statement is not stricken, the Plaintiffs respond as follows:

Denied.  The practice occurred on the high seas.  *See* Hornof Aff. ¶¶ 10-11. Therefore, the practice did not violate U.S. law. *See* 33 U.S.C. § 1902(a)(2).

20.     **This statement should be stricken** because it is based on a statement, not under oath, prepared by the government in the criminal case - to which, again, none of the Plaintiffs was a party.  It is not admissible in this action.  Also, it contains multiple statements in the same paragraph.

21.     **This statement should be stricken** because it is based on a statement, not under oath, prepared by the government in the criminal case - to which, again, none of the Plaintiffs was a party.  It is not admissible in this action.  To the extent this statement is not stricken, the Plaintiffs respond as follows:

Qualified. None of the entries was made in U.S. waters. *See* Hornof Aff., ¶¶ 10-11.

22.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible. *See* F. R. Evid. 901.

Additionally, the contents of the "summary" are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

23.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

24.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Additionally, the contents of the "summary" are inadmissible hearsay. Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

25.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

26.     Admitted.

27.     Qualified.  Significant information has been omitted. SR Exhibit 7.

28.     **These statements should be stricken** because the cited materials, even if admissible, do not support the allegations.

29.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the

document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.
Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials
must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

30.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the
ground that it is based on a document that has not been authenticated and for which no
foundation has been laid.  Without competent testimony identifying and authenticating the
document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.
Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials
must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).  Additionally,
the cited material does not support the allegation.

31.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the
ground that it is based on a document that has not been authenticated and for which no
foundation has been laid. Without competent testimony identifying and authenticating the
document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.
Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials
must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

32.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the
ground that it is based on a document that has not been authenticated and for which no
foundation has been laid. Without competent testimony identifying and authenticating the
document or other valid certification, the document is not admissible. *See* F. R. Evid. 901.
Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials
must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).  Additionally,
the cited material does not support the allegation.

33.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

34.     **This statement should be stricken** because speculation about Plaintiffs' former employer's motives is not relevant or admissible.

35.     **This statement should be stricken** because the cited material does not support the allegation (except for the irrelevant fact that Plaintiff Kordic at some point had sailed with Barbarovic on a vessel called the Fenella).

36.     **These statements, including the footnote, should be stricken** because it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.  Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

37.     **This statement should be stricken** because the government's sentencing memorandum in a criminal case involving a third party is not admissible evidence.

38.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

39.     **These statements should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

40.     **These statements should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

41.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

42.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the

document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

43.    **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay. Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

44.    **These statements should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.   Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

45.    **These statements should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.   Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

46.    **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

47.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible. *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

48.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

49.     **This statement should be stricken** because the cited material does not support the allegation.

50.     **This statement should be stricken** because the cited material does not support the allegation. Ms. Doyle worked for CBP; she was not CBP. No regulation, manual or any other form of official interpretation is cited.

51.     **This statement should be stricken** because the cited testimony lacks an adequate foundation.  Ms. Doyle was not being asked about CBP practice generally, and it is unclear whether she had sufficient knowledge of this particular practice.  *See* SR, ECF No. 154-136, Page ID # 6264-65.  She began her response by stating that "this is pure speculation… ."  *Id.,* DEP. at 12:18.  To the extent this statement is not stricken, Plaintiffs respond as follows:

Denied. No such policy exists. *See* 8 CFR §§ 1 *et seq.*

52. **This statement should be stricken** because the cited testimony lacks an adequate foundation. Mr. Fleming stated that "I think" the officers considered the crew members to be mala fide, *see* SR ECF NO. 154-133, Page ID # 6172 (DEP. at 21:20-24). If this statement is not stricken, Plaintiffs respond as follows:

Denied. There was no legal basis for the Coast Guard investigation. *See* Plaintiffs' Objection to Motion for Summary Judgment at 9-14. There was even less basis for considering any crew member to have violated U.S. law, and no crewman was ever a target of the investigation. *Id.* at 16 n.11; Defendant's SMF ¶ 93.

53. **This statement should be stricken** because the cited testimony lacks an adequate foundation. Ms. Doyle was not being asked about CBP practice generally, and it is unclear whether she had sufficient knowledge of this particular practice. *See* SR, ECF No. 154-136, Page ID # 6264-65. She began her response by stating that "this is pure speculation… ." *Id.,* DEP. at 12:18. Furthermore, the cited testimony does not support the allegation. The statement is conclusory. To the extent this statement is not stricken, Plaintiffs respond as follows:

Denied. Plaintiffs were bona fide crewmen, and no one had suggested otherwise. Hornof Aff., ¶¶ 25, 27-30; Zak Aff. ¶ 17, 19; Kordic Aff. ¶ 16.

54. **This statement should be stricken** because the cited testimony does not support the allegation and is conclusory. The Court must ignore conclusory allegations on summary judgment. *See*, *e.g., Chiang v. Horizon New England, Inc.,* 595 F.3d 26, 30 (1st Cir. 2010); *Triangle Trading Co., Inc. v. Rob Roy Industries, Inc.,* 200 F.3d 1, 2 (1st Cir. 1999). To the extent this statement is not stricken, Plaintiffs respond as follows:

Denied. Plaintiffs were detained and they felt detained. Hornof Aff., ¶¶ 26, 31; Zak Aff. ¶¶ 20, 27; Kordic Aff. ¶¶ 9-11.

55.     **This statement should be stricken** because there is no support for the assertion that this was the "only difference." To the extent this statement is not stricken, Plaintiffs respond as follows:

Denied. Plaintiffs were placed under guard for nine days. Zak Aff. ¶20; Hornof Aff. ¶31.

56.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible. *See* F. R. Evid. 901.

57.     Admitted.

58.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible. *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

59.     Qualified.  The alleged examination did not "reveal" anything that had not been previously disclosed. *See* Hornof Aff. ¶¶ 15-20.

60.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

61.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no

foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

62.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).

63.     Denied.  *See* Hornof Dep. at 37.

64.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.  To the extent the statement is not stricken, Plaintiffs respond as follows:

Qualified.  Section 1908(e) applies to violations of APPS, and therefore could not have been used in this instance.  Plaintiffs' Objection to Motion for Summary Judgment at 9-14. Furthermore, nothing in section 1908(e) authorizes an "agreement on security" requiring the ship to turn over its employees as human collateral.

65.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.   Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.  To the extent the statement is not stricken, Plaintiffs respond as follows:

14

Qualified.  The Agreement on Security is a device the government uses in APPS/ ORB cases to force shipowners, desperate to get their vessels back to sea, to require crew members to disembark and stay behind. Crewmen are not given a choice.  *See* Declaration of Bruce M. Merrill, ¶¶ 3-13.

66.    **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.  To the extent the statement is not stricken, Plaintiffs respond as follows:

Qualified.  The Agreement on Security is a device the government uses in APPS/ ORB cases to force shipowners, desperate to get their vessels back to sea, to require crew members to disembark and stay behind. Crewmen are not given a choice.  *See id.*

67.    **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.  To the extent the statement is not stricken, Plaintiffs respond as follows:

Denied.  Counsel for MST protested that the crewmembers were being deprived of their liberty by the Government. *See* Declaration of George M. Chalos ¶¶ 4-6 and Exhibit A.

68.    **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the

document or other valid certification, the document is not admissible. *See* F. R. Evid. 901. To the extent the statement is not stricken, Plaintiffs respond as follows:

Qualified. The Agreement on Security is a device the government uses in APPS/ ORB cases to force shipowners, desperate to get their vessels back to sea, to require crew members to disembark and stay behind. Crewmen are not given a choice. *See* Merrill Decl. ¶¶ 3-13.

69.  **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible. *See* F. R. Evid. 901. To the extent the statement is not stricken, Plaintiffs respond as follows:

Qualified. The Agreement on Security is a device the government uses in APPS/ ORB cases to force shipowners, desperate to get their vessels back to sea, to require crew members to disembark and stay behind. Crewmen are not given a choice. *See id.*

70.  **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible. *See* F. R. Evid. 901. To the extent the statement is not stricken, Plaintiffs respond as follows:

Qualified. The Agreement provides a "clear mechanism" to delay or prevent the return of passports; the crewmen were not parties to the Agreement on Security, and, contrary to the supposed Agreement, the government seized the passports, and the plaintiffs' attempts to find out what to do to get their passports back were consistently rebuffed. Hornof Aff., ¶¶33, 36, 40-41; Zak Aff. ¶¶21-22, 25; Kordic Aff. ¶¶17, 20. Furthermore, the Agreement on Security is a device

the government uses in APPS/ ORB cases to force shipowners, desperate to get their vessels back to sea, to require crew members to disembark and stay behind. Crewmen are not given a choice. *See* Merrill Decl. ¶¶ 3-13.

71.     Qualified.  The Agreement on Security is a device the government uses in APPS/ ORB cases to force shipowners, desperate to get their vessels back to sea, to require crew members to disembark and stay behind. Crewmen are not given a choice.  *See id.*

72.     **This statement should be stricken** because it is not supported by the cited material.  Furthermore, pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

73.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

74.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

75.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

76.   **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

77.   **This statement should be stricken** because it is not supported by the cited material.  Furthermore, pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.   Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.  To the extent the statement is not stricken, Plaintiffs respond as follows:

Denied. *See* Chalos Decl.¶¶ 5-6 and Exhibit A.

78.   **This statement should be stricken** because everything after "habeas corpus" is unsupported by the cited material, and the remainder of the statement is redundant, the parties having previously stipulated that Plaintiff Zac filed his habeas petition.  *See* Joint Statement of Facts ("JSF") ¶ 64.

79.   **This statement should be stricken** as redundant.  *See* JSF ¶ 68.

80.   **This statement should be stricken** as redundant.  *See* JSF ¶ 69.

81.   **This statement should be stricken** because it contains multiple allegations in the same numbered paragraph, in violation of D. Me. Loc. R. 56(b).  The statements are not supported by the cited materials.  Apart from two lines of deposition testimony, the cited material lacks a proper foundation and is inadmissible.  Furthermore, the paragraph contains editorial or argumentative commentary, which must be ignored.  *See Chiang,* 595 F.3d at 30. To the extent the statement is not stricken, Plaintiffs respond as follows:

Qualified. Plaintiffs never asked to be paroled.  *See* Hornof Aff. ¶ 38; Zak Aff. ¶ 27.

82.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.  Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).  Additionally, this statement is not supported by the cited material.

83.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  Summary judgment materials must be "in a form that would be admissible in evidence."  F. R. Civ. P. 56(c)(2).  Additionally, this statement is not supported by the cited material.

84.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

85.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

86.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid.   Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

87.     **This statement should be stricken** to the extent it relies on the testimony of Mr. Hornof, who testified he did not know how his passport was confiscated.  SR, ECF No. 154-140, Page ID # 6480:24-25.

88.     **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901. Moreover, the contents of the document are inadmissible hearsay.  To the extent the statement is not stricken, Plaintiffs respond as follows:

Admitted.

89.     **This statement should be stricken** because it is based on patently inadmissible assertions by government counsel and is irrelevant. To the extent the statement is not stricken, Plaintiffs respond as follows:

Denied. *See* Merrill Decl. ¶¶ 26-28.

90.     **This statement should be stricken** as unduly vague and ambiguous.  Moreover, the cited materials concern only two of the Plaintiffs.   To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified. The special benefit parole did not require surrender of passports. Defendant's agents took them anyway. *See* Declaration of Elaine Akers ("Akers Decl.") ¶9 and Exhibit D.

91.    **This statement should be stricken** because the cited material, to the extent it is competent, merely indicates that the Plaintiffs "had a regular supervision every day."   *See* SR ECF No. 154-139, Page Id. # 6411:22-23.

92.    Denied. *See*  Hornof Aff. ¶ 36-37, 39; Zak Aff. ¶¶ 25-26; Kordic Aff. ¶¶ 17-21.

93.    **This statement should be stricken** because it is not supported by the cited material.

94.    **This statement should be stricken** because it contains multiple allegations in the same numbered paragraph, in violation of D. Me. Loc. R. 56(b).  The statement that Hornof "changes his mind" is not supported by the cited material or the record evidence. To the extent the paragraph is not stricken, Plaintiffs respond as follows:

Qualified. Hornof was not "initially" willing to cooperate; he was always willing to cooperate *and* wished to go home. He never changed his mind.  His need to go home simply became more pressing when his mother-in-law died.  *See* Hornof Aff.  ¶¶ 43-45, 47-51.

95.    Admitted.

96.    Admitted.

97.    Admitted.

98.    **This statement should be stricken** pursuant to D. Me. Loc. R. 56(e) on the ground that it is based on a document that has not been authenticated and for which no foundation has been laid. Without competent testimony identifying and authenticating the document or other valid certification, the document is not admissible.  *See* F. R. Evid. 901.

99.    Admitted.

100.    Qualified. The warrant was sought long after Mr. Kordic formally sought the return of his passport on August 9, 2017.

101.    Qualified. The condition was based on misleading information and was impossible to fulfill because Plaintiffs' passports had been confiscated and were in the custody of the United State Coast Guard.

102.    Admitted.

103.    **This statement should be stricken** because it is not supported by the cited materials.  At most, the cited materials show that Plaintiffs sought their release, a fact to which the parties have already stipulated.  *See* JSF, ¶ 84.  Furthermore, the paragraph contains editorial or argumentative commentary, which must be ignored.  *See Chiang,* 595 F.3d at 30.

104.    **This statement should be stricken** because it contains multiple allegations in the same numbered paragraph, in violation of D. Me. Loc. R. 56(b) and has no relevance to Defendant's motion.  To the extent the paragraph is not stricken, Plaintiffs respond as follows:

Qualified. Admitted that Defendant made those arguments which the Court rejected; otherwise, denied. *See* SR Exhibit 90 (ECF No. 154-90).

105.    Admitted.

106.    **This statement should be stricken** as having no relevance to Defendant's motion.  To the extent the statement is not stricken, Plaintiffs respond as follows:

Qualified.  In a five-hour deposition, Mr. Hornof declined to answer three entirely irrelevant questions; the Government did not press him for a further response.  SR, ECF No. 154-123, Page Id. # 5598, 5601, 5604-06, 5727.

107.    **This statement should be stricken** because it is not supported by the cited material.  To the extent it is not stricken, Plaintiffs respond as follows:

Denied.  Plaintiffs were released because the court ordered that they be released as soon as their depositions were taken.  *See* JSF, ¶ 85.

108.   **This statement should be stricken** because it is based on inadmissible hearsay.

109.   **This statement should be stricken** because it is based on inadmissible hearsay. It also contains impermissible editorial comment and is redundant.

110.   **This statement should be stricken** because it is based on inadmissible hearsay. It also contains impermissible editorial comment and is redundant. To the extent it is not stricken, Plaintiffs respond as follows:

Denied.  Defendant mischaracterizes the Plaintiffs' position. *See* SR, Exhibit 62.

111.   Admitted.

112.   Admitted.

113.   **This statement should be stricken** because it contains multiple allegations in the same numbered paragraph, in violation of D. Me. Loc. R. 56(b).  The second allegation is not supported by the record citation. To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified. This was an allocation agreed to by MST and the Government.

114.   **This statement should be stricken** because the second sentence is not supported by the record citation. To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified. Admitted that the motion was filed. Otherwise, denied. The contingent fee came before the court because Defendant vindictively and unsuccessfully had moved the court to prohibit it.  *See* SR Exhibit 78.

115.   **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it

asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

116. **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

117. **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

118. **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

119. **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

120.   **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

121.   **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

122.   **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

123.   **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

124.   **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it

asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

125.    Qualified.  The quoted language appears in the motion, but Defendant mischaracterizes Plaintiffs' position.

126.    **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

127.    **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

128.    **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

129.    **This statement should be stricken** because the use of quotation marks makes the statement ambiguous and confusing.  Is the Government admitting the statement or, rather, is it

asserting that someone made the statement?  To the extent the statement is not stricken, the Plaintiffs respond as follows:

Qualified.  The quoted language, taken out of context, appears in the motion.

130.    Qualified.  The quoted language appears in the motion, but Defendant mischaracterizes Plaintiffs' position.

131.    Qualified.  The quoted language appears in the motion, but Defendant mischaracterizes Plaintiffs' position.

132.    **This statement should be stricken**, except for the acknowledgment that Plaintiffs had cooperated with the prosecution, because the assertion that the Government objected is irrelevant and the remainder of the statement is argumentative and conclusory and, furthermore, is based on an unsworn document that is itself argumentative and conclusory.  *See Chiang,* 595 F.3d at 30.

133.    Qualified.  Judge Torresen made these comments in the context of considering whether Plaintiffs had established whether they were "victims" of a crime in the context of the Crime Victims' Rights Act.  SR, ECF No. 154-130.

134.    **This statement should be stricken** as inadmissible under the collateral source rule and irrelevant.  *See, e.g., Charron v. County of York,* No. 2:18-cv-00105-JAW, 2021 U. S. Dist. LEXIS 259748, * 33 (D. Me. Aug. 23, 2021); *Werner v. Lane,* 393 A.2d 1329, 1336 (Me. 1978).

135.    **This statement should be stricken** as inadmissible under the collateral source rule and irrelevant.  *See, e.g., Charron v. County of York,* No. 2:18-cv-00105-JAW, 2021 U. S. Dist. LEXIS 259748, * 33 (D. Me. Aug. 23, 2021); *Werner v. Lane,* 393 A.2d 1329, 1336 (Me. 1978).

## II.    PLAINTIFFS' ADDITIONAL STATEMENT OF MATERIAL FACTS

1.    In May 2017, Jaroslav Hornof signed onto the M/V MARGUERITA as she transited the Panama Canal with cargo loaded in Brazil and destined for Vancouver, Canada. *See* Declaration of Jaroslav Hornof ("Hornof Aff."), ¶¶2, 9.

2.    Within days of boarding, Mr. Hornof determined that the vessel's then Chief Engineer was ordering the discharge overboard of oily bilge waters in international waters in violation of Liberian laws that implemented MARPOL. *Id.,* ¶10.

3.    All such discharges had occurred in international waters, far from the United States. *See id.* ¶11.

4.    Like most nations, the Republic of Liberia, where the vessel is registered, is and at all relevant times was a signatory to MARPOL, the set of international conventions designed to minimize pollution from vessels registered to signatories and to insure the efficient handling of investigations into such pollution. *See* Declaration of Elaine Akers ("Akers Decl."), ¶ 10 & Exhibit E.

5.    As the flag state for the vessel, Liberia was the "Administration" for purposes of MARPOL enforcement. *See* MARPOL,'73, Article 2(5), 12 I.L.M. at 1321, attached hereto as Exhibit A.

6.    On June 19, 2017, MST's corporate compliance officer notified various officials of the Republic of Liberia and of the United States that MST had just received a brief written report from the Third Engineer (Hornof) "alleging that the vessel's Chief Engineer had not accurately recorded the handling of vessel's bilge water in the Oil Record Book" and that "a comprehensive investigation into the incident has been initiated by the vessel's Owner and Manager." The notification continued:

> Both Owner and Manager have made the alleged incident a matter of priority and
> as part of the investigation are assessing what, if any, corrective steps and
> supplemental preventive measures can be taken.  To assist in this regard,
> Compliance Systems, Inc. is being instructed to attend onboard the Vessel as soon
> as possible, which at present, appears to be her next port of call in Brazil. …
> Specifically, Compliance Systems, Inc. is being requested to conduct an
> unannounced, independent third-party MARPOL audit and shipboard investigation
> on the M/V MARGUERITA.  A copy of the auditor's report and findings will be
> provided once available. … Owner and Manager will update and/or amend this
> initial report as additional facts and information becomes known.

*See* Joint Stipulations of Fact ("JSF") ¶ 26; Akers Decl. ¶7 and ECF No.54-80 (PageID# 5000).

7.      U.S. officials, including probation officials, were included in this notice due to a

requirement of an Environmental Compliance Plan imposed by the United States District Court

for the District of Minnesota as a result of MST's 2016 conviction for violation of the Act to

Prevent Pollution from Ships ("APPS") on the Great Lakes involving another vessel it managed.

*See* JSF, ¶¶ 28-29.

8.      After receiving this notice and the more extensive disclosure from Attorney

Chalos dated June 28, 2017, indicating that the Owner and Manager "stand ready to promptly

respond to any questions you may have," no representative of the United States responded or

requested additional information.  *See* Exhibit A to Akers Decl. at pages 9-10; JSF ¶35.

9.      The United States did not attempt to coordinate any response with the flag state,

Liberia.  *See* Exhibit A to Akers Decl. at 8.

10.     When the vessel arrived in Portland Maine on July 7, 2017, Mr. Zak, his contract

having expired, fully expected to fly back to his native Slovakia the next day.  *See* Declaration of

Lucas Zak ("Zak Aff."), ¶¶ 10, 16.

11.     In accordance with his contract, MST had purchased airline tickets for him for a

flight from the Portland International Jetport scheduled to depart on July 8, 2017 at 1:05 p.m.

*See id.,* ¶ 12

12.     Zak was then 22 years old and living with his parents and fourteen-year-old sister. *See id.* ¶¶ 11, 13.

13.     He had started his studies at a maritime academy in Slovakia and was planning to resume his college training that fall.  *Id.,* ¶ 14.

14.     He had just completed his second voyage, which was ten months long.  That voyage followed a rest of only one month after his initial voyage, lasting eight months.  Hence, Zak had been at sea for eighteen of the last nineteen months prior to the ship's arrival in Portland.  *See id.,* ¶ 15.

15.     Following his unusually lengthy time at sea, he was very eager to return home without delay.  *Id.,* ¶ 16.

16.     Plaintiffs Hornof and Kordic expected to continue their service on the vessel after what was scheduled to be a very brief stopover in at the Portland harbor for loading/unloading. *See* Hornof Aff., ¶ 7; Akers Decl. ¶6 and ECF No.54-9 (PageID# 4353).

17.     Mr. Hornof was a fast-rising, highly regarded professional mariner. He was a talented engineer who anticipated progressing through the ranks in his chosen career.  *See* Hornof Aff. ¶¶ 2-4

18.     Mr. Hornof was and is a devoted family man who lives with his family in Prague. When the M/V MARGUERITA arrived in the port of Portland, his wife was expecting the couple's second child, due in the fall.  He was eager to complete his contract and return home to support his wife in the latter stages of her pregnancy in plenty of time before the birth of his second child.  *See id.,* ¶¶ 6-7.

19.     Mr. Kordic was an experienced mariner with a long career as an engine room professional.  *See* Kordic Deposition ("Kordic Dep.") at 10 (PageID# 6573).

20.     U.S. Customs and Border Protection (CBP) officials granted the entire crew, including Plaintiffs, valid shore passes and either D-1 or D-2 permits on July 7, 2017.  *See* JSF ¶¶ 39-42.

21.     That same day, at least thirteen U.S. Coast Guard employees, including members of the Coast Guard's criminal division (Coast Guard Investigative Service, or "CGIS"), came on board and began interrogating crew members, including Plaintiffs, concerning the high-seas discharges that the vessel's Owner and Manager had disclosed before the vessel's arrival.  *See* Hornof Deposition ("Hornof Dep.") at 34-37 (PageID# 6472-6475); JSF ¶¶ 44, 47.

22.     On July 8, 2017, CBP officials, acting in concert with the Coast Guard, refused to allow the vessel to depart, and detained the entire crew.  *See* Hornof Aff. ¶26; JSF, ¶¶ 53, 57-58.

23.     These CBP officials revoked each of the crew's shore passes, designating them all "mala fide" crewmen, keeping Plaintiff Zak from flying home and keeping the rest from leaving the vessel even for a moment. *See* JSF ¶¶ 54-61.

24.     The government did not disclose to Plaintiffs that it had declared them to be "mala fide" crew members, nor did it provide any explanation or notice of their rights to appeal or protest that determination and their detention.  *See* Hornof Aff., ¶¶ 25, 28-30; Zak Aff. ¶19; Kordic Aff. ¶ 16.

25.     Plaintiffs were in fact bona fide, genuine members of the vessel's crew. Hornof Aff., ¶27; Zak Aff. ¶ 17; Kordic Aff. ¶ 16.

26.     The Coast Guard officials had been told by MST's lawyers that a corrective entry had been made in the ORB, but they did not disclose their knowledge of the entry to the captain or crew.  *See* JSF ¶¶ 35, 45; Hornof Aff. ¶ 25.

27.     The Coast Guard officials stated or implied to Mr. Hornof that they had no prior notice of the misconduct uncovered by Hornof.  Based on their representations, he concluded the Coast Guard officials had received no notice from MST.  *See* Hornof Aff., ¶¶ 23-24.

28.     The U.S. investigators continued to hold Plaintiffs and other crew members on board the vessel against their will after July 8 and through July 16, 2017. *See id., ¶ 31; Answer, ¶¶ 53, 73.

29.     A guard was posted over the crew, and the entire detained crew, including Plaintiffs, were prohibited from leaving the vessel, and were mustered for the taking of attendance twice daily.  *See* Hornof Aff. ¶26; Zak Aff. ¶ 20.

30.     After Mr. Zak filed his habeas corpus petition, the government negotiated a bond for the release of the vessel but also insisted that Plaintiffs' employer (a) purport to extend unilaterally the expired employment contract of Zak and another crew member, (b) unilaterally extend the contracts of other crew members, including Hornof and Kordic, for as long as the government demanded, (c) oust the Plaintiffs and eight other crew members from the vessel before it was allowed to depart, leaving them behind in the United States, and (d) direct those crew members to assist the United States as instructed.  *See* Akers Decl. ¶ 8 and SR Exhibit 41.

31.     The word *witness* does not appear in the Agreement on Security.  *See id.*

32.     The government's practice in APPS/ORB cases is to hold crew members forced ashore for many months regardless of whether they have information material to the government's investigation.  The only exception applies where, as here, the crew have counsel to protect their rights.  *See* Declaration of Bruce M. Merrill ("Merrill Decl.") ¶¶ 3, 16-17; Hornof Dep. at 80:20-81:7.

33.     Although the Coast Guard is authorized to detain vessels and to condition their release on the filing of a bond under a variety of statutes and for a variety of reasons, only in APPS/ORB cases does the Coast Guard insist on the provisions outlined in paragraph 30 hereinabove.  *See* ECF No. 154-134, Page ID# 6215, Dep. at 33:4-35:25.

34.     Plaintiffs were not parties to, and never consented to or approved, the Agreement on Security.  *See* Hornof Aff., ¶ 33; Kordic Aff. ¶¶ 5, 28; Zak Aff. ¶¶ 5, 8.

35.     Plaintiffs were compelled to disembark on July 16th and were then taken by Special Agent Mark Root to the CBP office where they were "paroled" into the United States.  They did not do so volitionally.  *See id.; see also* Hornof Aff. ¶ 38; Kordic Aff. ¶¶ 11-15; Zak Aff. ¶ 27.

36.     None of the Plaintiffs consented to be left behind in the United States, nor did they agree to be placed on any form of parole.  *See id.*

37.     Plaintiffs' attorney was excluded from the government's offices while the Plaintiffs were involuntarily paroled into the United States.  *See* Hornof Aff. ¶ 35; Kordic Aff. ¶ 12; Zak Aff. ¶ 24.

38.     Although the Agreement on Security included provisions that MST would retain the crew members' passports, the government confiscated Plaintiffs' passports during the parole process and outside the presence of their attorney.  *See* Exhibit A to Akers Decl. at 13.

39.     Plaintiffs never consented to the confiscation of their passports. *See* Hornof Aff. ¶ 36; Kordic Aff. ¶¶ 17, 20; Zak Aff. ¶ 25.

40.     It was not a condition of the involuntary parole (as finalized on July 28) that Plaintiffs relinquish their passports.  *See* Akers Decl. ¶ 9 and Exhibit D.

41.     The Government's treatment of Plaintiffs followed a pattern in APPS/ORB cases whereby U.S. officials force shipowners to leave crewmembers behind, refuse to communicate

with those crewmen or their counsel concerning these turnover arrangements, enter into "agreements on security" without involving any of the crew, and then knowingly misrepresent that the crew somehow consented to their seizure. *See* Merrill Decl., ¶¶ 3-12, 18.

42.     Government officials involved in APPS/ORB cases routinely draft "agreements on security" to try to make it appear that the vessel owner is somehow authorized to represent the interests of crew members even when (as here) they know the crewmen have counsel; they know this is not true. *See* Merrill Decl., ¶¶ 5-10.

43.     MST and the shipowner, through their counsel, expressly told Defendant's agents that the government has "interfere[d] with the rights and liberties of at least nine (9) crew-members [including Plaintiffs]," has forced [them] ashore from their shipboard homes and  has DETAINED [them] in the US" and emphasized: "The government has detained and is detaining these men.  Please do not go to court and argue that they are in Portland voluntarily. It is not true." Declaration of George M. Chalos,,¶¶ 3, 5-6 and Exhibit A (emphasis in original).

44.     At no time did MST's counsel represent that the crewmen had agreed to stay in Maine and, in fact, he protested that the interference with their liberty was "grossly unreasonable and out-of-bounds." *Id.,* ¶¶ 4, 6 and Exhibit A.

45.     At no time was MST authorized to negotiate for Plaintiffs' detention.  *See* Hornof Aff. ¶ 32; Zak Aff. ¶¶ 8, 21-22.

46.     Only Plaintiffs' lawyer was so authorized, yet the government agents refused to negotiate with him, even after requiring Plaintiffs to sign a form saying their attorney was authorized to represent them. Zak Aff. ¶¶ 6-8, 21.

47.     By letter dated 01 August 2017, the Republic of Liberia protested the actions of the U.S. Coast Guard concerning the M/V MARGUERITA. *See* Akers Decl. ¶ 4 and Exhibit B.

48. Over the following weeks, each of the Plaintiffs demanded the return of his passport and requested disclosure concerning who had taken his passport and the legal basis for its confiscation. *See* Hornof Aff. ¶ 40.

49. The government refused to disclose the location and custody of the Plaintiffs' passports or the basis for their confiscation. *See id.,* ¶ 41.

50. The Declaration signed by Special Agent Root on July 16, 2017 to support the government's *ex parte* application to arrest Mr. Zak as a "material witness" was misleading and false in many respects, including the following:

    a. The application and the Declaration asserted that during the July 2017 port call in Portland Harbor the oil record book for the M/V MARGUERITA had been "presented" to the Coast Guard, implying it had been held out as accurate. In fact, however, the ORB had been turned over at the government's demand and the Captain immediately pointed out the corrective entry.

    b. The application stated that pollution events were suspected of having occurred in the United States whereas Root and other officials had never been told and did not believe that any pollution had occurred in the U.S., and none had.

    c. The Declaration stated that "all crimes alleged in this Declaration took place within the United States," when none of the pollution events described as illegal took place within the United States, and no described crime took place within the United States.

    d. The Declaration asserted that the July 7 boarding had been an administrative port-state MARPOL examination conducted "to determine [the vessel's] compliance with the Act to Prevent Pollution from Ships" Instead, the boarding was designed

to confirm what the vessel managers and owners had already disclosed, and no

violation of any statutory provision was suspected.

e. The Declaration asserted that on July 7 crewmembers had "revealed" that

discharges had occurred and how they occurred.

f. The Declaration misrepresented the applicable law.  For example, the Declaration

stated that U.S. law required the vessel to maintain an ORB "for not less than

three years." The Declaration cited as the regulation supposedly imposing that

requirement 33 C.F.R. §151.25.  In fact, however, as the government knew and

should have known, section 151.25(k), the only provision in the regulations that

prescribes a requirement for the length of time an ORB must be maintained,

provides in full as follows:  "The Oil Record Book ***for a U.S. ship*** shall be

maintained on board for not less than three years [emphasis supplied]."

g. The Declaration created the false impression that U.S. law governed the entries

the vessel was required to make in its ORB even when a foreign-flagged vessel is

outside the United States.

h. The Declaration and Application implied that MARPOL imposed legal

requirements directly on ships, whereas the government knew that MARPOL is

not what is known as a "self-executing" treaty.

i. The Application states that "Coast Guard regulations prescribe that when a discharge

that is greater than 15 ppm, or not made through proper oil separation equipment is

made within 12 nautical miles of the nearest land of the United States, a detailed

report must be made to the nearest Coast Guard Captain of the Port," but the

government knew that there was no reason to believe (or to imply) that any discharge had occurred within 12 nautical miles of the United States – and none had.

j.  The Declaration falsely states that "upon further inspection" the government discovered "no entries" addressing improper discharges.

k.  The application and supporting Declaration stated that the oil record book had been "presented" to the Coast Guard, falsely implying the ship's crew had vouched for the ORB.

l.  The application and Declaration withheld from the judicial officer the fact that plaintiff Zak had filed a petition for his liberty.

m.  The application and Declaration withheld from the judicial officer the fact that plaintiff Zak was already being detained pursuant to the Agreement on Security.

n.  The Declaration omitted the fact that the Coast Guard had seized Mr. Zak's passport, thereby making his travel impossible.

o.  The Declaration omitted the fact that Zak had agreed to cooperate with the investigation and had never refused to testify.

p.  The Declaration indicated that Zak would not be subject to compulsory process if he were allowed to go home but omitted the fact that the U.S. and the Slovak Republic had signed a treaty in 2006, still in force, requiring cooperation in obtaining testimony in criminal matters.

q.  The Declaration failed to acknowledge that mariners employed in the shipping industry must frequently return to the United States and would naturally fear arrest and other reprisal upon such return if they violated a U.S. subpoena.

      r.    The Declaration omitted the fact that a cooperative witness in an APPS investigation has a very strong incentive to testify due to the availability of an award of up to 50% of any fine imposed under APPS to the witness (33 U.S.C. § 1908).

      s.    The Declaration indicated that two persons, including Zak, had material evidence and that both had worked in the engine room and had knowledge of its operations but failed to disclose that the Coast Guard then had in its custody seven other crew members, including several who worked in the engine room and the captain, as well as Zak.

*See* SR Exhibit 82 (ECF No. 154-82); Akers Decl.¶¶ 3, 15-21 and Exhibit A; ECF No.54-80 (PageID# 5000); Hornof Aff. ¶¶ 11, 25, 33, 36, 38, 42; Zak Aff. ¶¶ 5, 8, 18, 25, 27; Hornof Dep. at 60:4-64:5 (PageID# 6498-6502); Merrill Decl. ¶¶ 21-25; treaties attached hereto as <u>Exhibit B</u>; JSF ¶¶ 26, 35, 45.

    51.    Mr. Hornof's mother-in-law died on July 30, 2017. *See* Hornof Aff. ¶ 43.

    52.    Mr. Hornof's wife, an only child, was responsible for making funeral and related arrangements while pregnant with the couple's second child and taking care of their young child. She begged Hornof to try to find a way to come back home and help her get through this very difficult period. *Id.*; *see also* Hornof Dep. at 57.

    53.    Mr. Hornof, who had been cooperative with all investigations, requested that the government agree that he could travel home to be with his family. *Id.,* ¶ 49.

    54.    On August 3, 2017, the government informally served a subpoena on Mr. Hornof to testify before a grand jury on August 9, 2017. *Id.,* ¶ 45.

    55.    Hornof agreed to appear pursuant to the informally served subpoena, and did so. *Id.*

56.     Mr. Hornof arrived with two other members of the crew.  The others were called to testify.  Government officials told Mr. Hornof that the grand jury did not have time to hear his testimony.  *Id.*

57.     Mr. Hornof assured the government officials he would cooperate but needed to get home to comfort and take care of his wife.  *Id.,* ¶ 49.

58.     The government had already prepared an *ex parte* application for Mr. Hornof's arrest as a material witness together with an affidavit of USCG Special Agent Root; that same day, the government filed the application and affidavit.  *See* SR Exhibit 94.

59.     The application included most of the same false assertions and misleading omissions outlined above with respect to the application and supporting Declaration for the arrest of Mr. Zak.  The application and affidavit also included other false assertions and material omissions, including without limitation the following:

a.    The Application and affidavit affirmatively asserted that an arrest warrant was necessary to secure Mr. Hornof's appearance and testimony.

b.    The application and affidavit withheld information about the extent of Mr. Hornof's cooperation and his ongoing willingness to cooperate.

c.    The fact that Mr. Hornof had agreed to and had appeared pursuant to a subpoena was omitted; the opposite false impression was intentionally created.

d.    The application asserted that the vessel's oil record book had been "presented" to the Coast Guard on July 7, falsely implying it had been held out as accurate.

e.    The application and affidavit stated that interviews of the engineering crew conducted after the boarding "revealed" that discharges had occurred and that crew members "admitted" the discharges occurred; the assertions were expressly

intended to mislead the Court into believing the so-called investigation orchestrated by the government had uncovered improper activity that in fact had been disclosed.

f.   The application and affidavit asserted that the government had reason to believe the vessel's crew had discharged untreated oil within the United States in violation of the Clean Water Act; in fact the government had no information about any such discharge, did not believe any such discharge had occurred, and none had.

g.   The Affidavit included inaccurate assertions of law.  For example, the Declaration stated that under U.S. law the ship's oil record book "must be maintained onboard the vessel for not fewer than three years. . . ," citing "33 C.F.R. 151.25."  As alleged above, Agent Root and his confederates knew the only provision in section 151.25 that requires an ORB to be preserved for any particular period of time is section 151.25(k), which does not apply to foreign vessels *at all* and instead provides in full as follows:  "The Oil Record Book ***for a U.S. ship*** shall be maintained on board for not less than three years."  [emphasis supplied]

h.   The application and affidavit falsely asserted that U.S. law required the vessel's personnel to make entries concerning events that happened outside the United States.

i.   Although the Affidavit disclosed that "attorneys for MST and the owner had written a letter" disclosing an "alleged" discharge, the assertions were designed to mislead the court.  For example, the Declaration did not disclose that even before the attorney letter, MST had disclosed Mr. Hornof's report and provided detailed information about it to the MARPOL Administration and the U.S. government.

j.   Although the Affidavit noted that Mr. Hornof had provided information, it generally minimized the strong evidence of his willingness to cooperate and of his cooperation with the government and the company in disclosing and ending the misconduct.

k.   The application and affidavit withheld from the judicial officer the fact that plaintiff Hornof was already being detained pursuant to the Agreement on Security and that his passport had been seized.

l.   The Affidavit indicated that Hornof would not be subject to compulsory process if he were allowed to go home but omitted the fact that the U.S. and the Slovak Republic had signed a treaty in 2006, still in force, requiring cooperation in obtaining testimony in criminal matters.

m.   The Affidavit indicated that Hornof had material evidence because he had worked in the engine room and had knowledge of its operations but failed to disclose that the Coast Guard then had in its custody eight other crew members, including several who worked in the engine room and the captain, as well as Hornof.

*See* SR Exhibit 94 (ECF No. 154-94); Akers Decl.¶¶ 3, 15-21 and Exhibit A; ECF No.54-80 (PageID# 5000); Hornof Aff. ¶¶ 11, 25, 33, 36, 38, 42, 44-47, 50; Zak Aff. ¶¶ 5, 8, 18, 25, 27; Hornof Dep. at 60:4-64:5 (PageID# 6498-6502); Merrill Decl. ¶¶ 21-25; treaties attached hereto as Exhibit B; JSF ¶¶ 26, 35, 45.

60.    On August 9, 2017, Mr. Kordic, along with Mr. Hornof, the ship's captain and several other crew members, filed a motion for the return of their passports and visas. *See* Akers Decl. ¶ 5 and Exhibit C.

61.    Mr. Kordic agreed (prior to August 21, 2017) that he would testify on August 22, 2017, and he did so. Kordic Aff. ¶ 23.

62.     On August 21, Government law enforcement officials, including Special Agent Root, applied for and obtained an *ex parte* warrant for Mr. Kordic's arrest as a material witness. The application and Declaration of Special Agent Root were misleading and false in the ways outlined above.  The false statements and misleading omissions included, without limitation, the following:

> a.  The application asserted that during the July port call in Portland Harbor the oil record book for the M/V MARGUERITA had been "presented" to the Coast Guard, implying that it had been held out as accurate, when in fact the captain had pointed out the corrective entry, which states that prior entries may not be reliable;
>
> b.  The application stated that pollution events were suspected of having occurred in the United States and having violated the Clean Water Act, whereas the defendants had no reason to believe, had never been told, and did not believe that any pollution had occurred in the U.S.; and none had;
>
> c.  The application stated that crewmembers had "admitted" to the defendants and others working with them that the vessel had "discharge[d]" bilge water and asserted that "the investigation has revealed possible violations of [APPS and] the Clean Water Act. . .," implying that the investigation had revealed violations not disclosed in advance and that pollution had occurred in the United States, whereas the defendants knew those assertions were false, fraudulent and misleading.  The nature of the discharges had been disclosed to the defendants before the vessel arrived in Portland and the defendants had no evidence of any discharge occurring in the United States or of any violation of the Clean Water Act.

d.  The Affidavit falsely stated that "documents reviewed during the investigation showed that bypass activity occurred as recently as June 2, 2017."

e.  The Affidavit stated that all alleged crimes occurred in the United States, while also asserting that "crew members have illegally discharged untreated machinery space bilge water into the ocean on multiple occasions," intending to imply that the discharges violated U.S. law; in fact, the defendants knew and believed no discharge in violation of U.S. law had occurred; but they wanted to convince the Court that some pollution events had violated U.S. law so that the Court would be more likely to order the arrest of plaintiff Kordic.

f.  The application and affidavit asserted that the July 7 boarding had been an administrative port-state MARPOL examination conducted "to determine [the vessel's] compliance with the Act to Prevent Pollution from Ships," when in fact that boarding was choreographed to confirm what the vessel's owners and managers had already voluntarily disclosed (after plaintiff Hornof disclosed to them and put an end to the discharges), namely that pollution events were suspected to have occurred, and in fact occurred, outside the United States; the application and supporting Declaration made it appear and falsely claimed that the discharges were "discovered" by the defendants.

g.  The Affidavit asserted that on July 7 crewmembers had "revealed" that discharges had occurred and how they occurred.  In fact, and as the defendants knew or should have known, how the discharges were arranged had been revealed by crewmembers and MST much earlier, as alleged above.

43

h. The Application and the Affidavit intentionally misrepresented applicable law. For example, the Application and the Declaration stated that U.S. law required the vessel to maintain an ORB "for not less than three years." The Declaration cited as the regulation supposedly imposing that requirement 33 C.F.R. §151.25.  In fact, however, as the defendants knew and should have known, section 151.25(k), the only provision in the regulations that prescribes a requirement for the length of time an ORB must be maintained, provides in full as follows:  "The Oil Record Book ***for a U.S. ship*** shall be maintained on board for not less than three years." [*emphasis* supplied.]  As the defendants knew, the M/V Marguerita was not a "U.S. ship," and U.S. law imposes no requirement for the length of time it or any foreign vessel must maintain an ORB.

i. Similarly, the Application and Affidavit were written to create the impression that U.S. regulations require certain entries that must be made in an ORB even when a foreign-flagged vessel is outside the United States; whereas the defendants and their cohorts knew that this assertion was false and that the described regulations requiring various entries expressly apply to foreign-registered vessels, such as the M/V Marguerita, ***only*** while they are within the United States.  The defendants knew or should have known that none of the events described and supposedly omitted from the ORB occurred in this country.

j. The application and affidavit misrepresented the nature of the boarding and investigation.  For example, the Declaration stated that "on or about July 7, 2017, within the jurisdiction of the United States, USCG Inspectors Peter Fransson, Christopher Bains, Christopher Copson, David Simonds, and Richard Yazbek

boarded the M/V MARGUERITA [sic] to conduct a Port State Control

examination while the vessel was moored at the Rolling Mills Terminal in

Portland, ME."  In fact, however, the boarding was not a routine port state control

inspection, but instead an extra-constitutional criminal investigation that involved

no less than thirteen federal officials including special agents from the Coast

Guard's criminal division, such as Agent Root.

k.  The application and affidavit included misleading assertions concerning the

nature and timing of MST's disclosure of vessel discharges, including the false

intimation that the first such disclosure to the United States government occurred

via a letter from "attorneys for the owner and operator" of the vessel "on June 28,

2017," whereas the defendants knew that prior to that letter the owner and

operator had made detailed disclosure of discharges to the government, to the

Administrator for purposes of MARPOL, and to other officials – and had pledged

full and complete cooperation, all as a result of the actions of the plaintiffs in

causing the discharges to be terminated and reported.

l.  The application and affidavit withheld from the judicial officer the fact that

plaintiff Kordic was already being detained pursuant to the Agreement on

Security and that his passport had been seized.

m.  The application and affidavit withheld from the judicial officer the fact that

plaintiff Kordic had already agreed to testify before the Grand Jury and that he

was scheduled to testify the following day, August 22.

n.  The Affidaivt asserted that Mr. Kordic had made disclosures to company officials.

The assertion was intended to imply that those officials had withheld and were

withholding that information from the defendants and the United States; instead, as the defendants well knew, full and complete cooperation had been provided and Mr. Kordic and others remained available to provide ongoing cooperation.

o. The Affidavit indicated that Kordic had material evidence because he had worked in the engine room and had knowledge of its operations but failed to disclose that the Coast Guard then had in its custody eight other crew members, including several who worked in the engine room and the captain, as well as Kordic.

*See* SR Exhibit 82 (ECF No. 154-82); Akers Decl.¶¶ 3, 15-21 and Exhibit A; ECF No.54-80 (PageID# 5000); Hornof Aff. ¶¶ 11, 25, 33, 36, 38, 42; Zak Aff. ¶¶ 5, 8, 18, 25, 27; Kordic Aff. ¶¶ 17-18, 23; Hornof Dep. at 60:4-64:5 (PageID# 6498-6502); JSF ¶¶ 26, 35, 45; Merrill Decl. ¶¶ 21-25.

63.     At no time did Plaintiffs ever indicate to anyone that they consented to being placed in custody or detained in the United States.  *See* Kordic Aff. ¶¶ 10-19; Hornof Aff. ¶ 31-32, 36, 38; Zak Aff. ¶ 5, 22-27.

64.     None of the Plaintiffs was fluent in English; Zak had very little English and Kordic almost none.  *See* Hornof Aff. ¶ 39; Zak Aff. ¶ 28; Kordic Aff. ¶ 21.

65.     Plaintiffs had no relatives or friends in the United States.  *See id.*

66.     With limited means of communication and transportation, and subject to CGIS monitoring on a daily basis, and having been deprived of their passports and other papers by law enforcement agents, Plaintiffs were confined to a small area, were conscious of their confinement, and suffered great distress because of it.  *See* Hornof Aff. ¶¶ 38-39, 55, 61-64; Zak Aff. ¶¶ 28-30; Kordic Aff. ¶¶ 18-21, 29-30; Kordic Dep. at 27, 32-33.

67.     Plaintiffs truthfully indicated to government officials that they would come back to the District of Maine if they were allowed to go home.  *See* Hornof Aff. ¶¶ 42, 47, 49-50, 54; Kordic Aff. ¶ 23; Zak Aff. ¶ 32; Hornof Dep., SR, ECF No. 154-140, PageID# 6496.

68.     Plaintiffs' counsel tried to meet with the government's agents but the agents cancelled those meetings.  Hornof Aff. ¶ 42;

69.     Each of the Plaintiffs testified before the grand jury, but the government continued to hold each Plaintiff in custody and refused to allow any of them to return home until the Court finally ordered the government to allow them to return, over the government's objection.  *See* Hornof Aff. ¶¶ 49-53; Kordic Aff. ¶¶ 23-25; Zak Aff. ¶¶ 30-32.

70.     After each Plaintiff gave deposition testimony, the government delayed returning their passports in order to serve each of them with a subpoena purporting to require them to return to the United States to testify whenever the government's case against MST went to trial. *See* Hornof Aff. ¶ 54; Kordic Aff. ¶ 26; Zak Aff. ¶ 32

71.     Each of the Plaintiffs did return for trial in the criminal case against MST.  *See id.*

72.     The government negotiated a plea agreement with Plaintiffs' employer requiring MST to plead guilty only to a charge of obstruction of justice and to pay a 3.2 million dollar fine on that single count, which carried a maximum fine of five hundred thousand dollars ($500,000), with the government dismissing the eight counts under APPS.  *See* JSF ¶ 89.

73.     The court rejected the plea agreement as inherently unfair to the Plaintiffs.  *See* SR Exhibit 130 (ECF No. 154-130, PageID# 6085-6088.

74.     Each of the Plaintiffs suffered severe emotional distress because of his treatment by U.S. law enforcement officers.  *See* Hornof Aff. ¶¶ 39, 55-56, 61-64; Kordic Aff. ¶¶ 14, 19, 29-30; Zak Aff. ¶¶ 28-30, 34-35.

75.     Each Plaintiff felt unable to return to sea, because of the risk and fear he could again be detained in a foreign port.  *See* Hornof Aff. ¶¶57-61; Kordic Aff. ¶29; Zak Aff. ¶¶35-37.

76.     Each Plaintiff has suffered substantial loss of income due to leaving his maritime career.  *See id.*

77.     Foreign seamen represented by counsel in similar cases eventually manage to go back home, either through negotiation or court order; and a pattern has emerged whereby most of the repatriated seafarers have been asked to, and have agreed, that they would return for trial if their testimony was needed.  *See* Akers Decl.*,¶¶* 15-19.

78.     The agreements have frequently included an exception if the witness were on a work-related voyage at sea during trial.  As part of that exception, most of these witnesses agreed to give or had given depositions in case they were at sea during trial.  *Id.* ¶19.

79.     Every one of these crewmen who promised to return for trial should his testimony be requested, and whose testimony was in fact requested, either did return for trial or his deposition testimony was provided.  Depositions needed to be employed in only two of these instances.  Both involved vessels whose captain's testimony was needed primarily to authenticate documents and who were at sea when cases were called to trial.  In all other cases the witnesses in fact returned for trial.  *Id.* ¶20; Merrill Decl. ¶¶21-24; Zak Aff. ¶39; Hornof Aff. ¶67.

80.     Most of the clients who agreed to and did return for trial were *not* called to testify.  Akers Decl. ¶20.

81.     For example, Plaintiffs' counsel recently represented nine seafarers in the District of Delaware who were allowed to go home over the government's objection and who agreed to return for trial.  All of them (save the captain) actually returned.  The captain provided a

deposition, which was read into the record at trial.  All of the other crew members returned for trial but none of them was actually called as a witness.  *Id.,* ¶ 21.

82.     Those clients were initially detained in March 2019, and the case went to trial in December 2019.  In other words, if the government had had its way, those crew members would have been kept from their homes and families for nearly a full year unnecessarily.  *Id.*

83.      There has not been a single instance in which the testimony of any of Plaintiffs' counsel's clients was ever lost to the government because the seafarer was allowed to return home.  *Id.,* ¶ 22; *see also* Merrill Decl. ¶ 21.

84.     Defendant unconscionably treated Plaintiffs as human collateral or chattel. *See* Merrill Decl. ¶ 13; Hornof Aff. ¶ 65; Zak Aff. ¶ 36; Kordic Aff. ¶ 30.

Plaintiffs further incorporate herein all of the parties' Joint Stipulations of Fact by reference.

Dated at Portland, Maine this 31st day of August 2022.

 /s/ Edward S. MacColl
Edward S. MacColl

/s/ Marshall J. Tinkle
Marshall J. Tinkle
Attorneys for Plaintiffs

THOMPSON, MACCOLL & BASS, LLC, P.A.
15 Monument Square, 4th Floor
P.O. Box 447
Portland, ME  04112-0447
(207) 774-7600

CERTIFICATE OF SERVICE

I certify that, on the above date, I made due service of the above document by electronically filing the same using the Court's EM/ECF system.

/s/Edward S. MacColl

49