UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| …………………………………… ) <br> **JAROSLAV HORNOF, et al.** ) <br> ) <br> *Plaintiffs,* ) <br> ) <br> v. ) <br> ) <br> **UNITED STATES OF AMERICA, et al.** ) <br> ) <br> *Defendants.* ) <br> …………………………………… ) | CASE NO.: 2:19-cv-00198-JDL |

**<u>PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OBJECTING TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

NOW COME plaintiffs, Jaroslav Hornof, Damir Kordic and Lucas Zac, and supplement their memorandum objecting to defendant's motion for summary judgment.

Plaintiffs respectfully offer the following insights with respect to a question the Court posed at oral argument. The Court inquired concerning paragraphs in the Plaintiffs' Response to Defendants' Statement of Facts citing Mr. Merrill's Declaration[1] to support their contention that the Government did not in this case and does not generally believe in good faith that crewmembers who are the object of an Agreement on Security are (or in this case were) given a choice to disembark.

Although counsel found no assertion in the Defendant's Statement of Facts that anyone involved in this case believed the Plaintiffs had agreed to disembark or had disembarked voluntarily, the government's most arguably relevant assertions and plaintiffs' responses on the

---

[1] Counsel notes he may have caused some confusion concerning the Merrill Declaration by refiling it on November 22, 2022 after initially filing it on August 31, 2022, with plaintiffs' response to the government's summary judgement filing. The Merrill Declaration was refiled because in preparing for argument, counsel noted that in creating and filing the portable document format version of the signed declaration, an incorrect transcript was attached as Exhibit A to the Declaration. Other than correcting the attachment, the Declaration filed on November 22 and August 31 are identical, and counsel apologizes for any confusion.

1

topic appear to be found in paragraphs 70 and 71 of the Defendant's Statement of Material Fact. Paragraph 70 misleading quotes from the Agreement on Security as supposedly providing a "clear mechanism" by which a crewmember may request his passport. The plaintiffs objected, because in the quoted provision the Agreement on Security provides no mechanism for the return of passports, but instead provides that the plaintiffs' employer would withhold the passports for "at least 72 hours before returning the passport" and because the government instead seized the plaintiffs' passports. Plaintiffs further responded as follows:

> *Qualified:*
>
> *The Agreement provides a "clear mechanism" to delay or prevent the return of passports; the crewmen were not parties to the Agreement on Security, and, contrary to the supposed Agreement, the government seized the passports, and the plaintiffs' attempt to find out what to do to get their passports back were consistently rebuffed. Hornoff Aff. ¶¶ 33, 36, 40-41; Zak Aff. ¶¶21-22, 25. Furthermore, the Agreement on Security is a device the government uses in APPS/ORB cases to force shipowners, desperate to get their vessels back to sea, to require crew members to disembark and stay behind. Crewmen are not given a choice. See Merrill Decl. ¶¶3-13.*

Apparently referencing the Coast Guard's general understanding, paragraph 71 of Defendant's statement asserts that "Captain Michael Fazio, U.S. Coast Guard testified that 'after identifying [witness] crewmembers we engage in a consensual agreement with the vessel owner and it is understood that the vessel owner will have the consent of the parties so that we can negotiate on their behalf to get them benefits to stay in the country.' SR, ECF No. 154-134, Page 1D#:6213. Should they not agree, 'the issue would be turned over to the Department of Justice [whether to] seek material warrants and that would be up to the judge.'"

The Plaintiffs responded again citing their affidavits and Mr. Merrill's declaration that the assertion was inaccurate as to what happened to them (to the extent the assertion implied the

2

Coast Guard's general "understanding" applied here) and is inaccurate in describing the more general practice and "understanding," as follows:

*Qualified:*

> *The Agreement on Security is a device the government uses in APPS/ORB cases to force shipowners, desperate to get their vessels back to sea, to require crew members to disembark and stay behind. Crewmembers are not given a choice. See id.*

The Agreement on Security itself contradicts Captain Fazio's assertion. Nowhere does the form Agreement state that the vessel interests "have the consent of the [crewmembers] so that [the government] can negotiate on [the crewmembers'] behalf to get them benefits to stay in the country." Instead, paragraph 7 of the Agreement on Security notes that the crewmembers are not parties to the Agreement, that they are "required to remain within the jurisdictions of the U.S. District Court – of Maine" and that their rights under "federal laws are specifically preserved," as follows:

> *Nothing in this Agreement is to be deemed as binding on non-parties to this Agreement. In particular, for each ship's officer and crewmember who may be served with a federal Grand Jury, deposition, or trial subpoena or material witness warrant and who is required to remain within the jurisdictions of the U. S. District Court – of Maine, their rights pursuant to 18 U.S.C. §3144, F.R.Crim.P. Rule 15 and other federal laws are specifically preserved.*

The next most relevant assertion from Defendant's Statement of Facts may be paragraph 67. It asserts that Plaintiffs' passports were "held for safekeeping" and that MST's attorney consented to the Coast Guard retaining them, perhaps implying (although certainly not stating) that the Government believed or understood that MST had authority from the plaintiffs to consent to the government seizure plaintiffs' passports. Plaintiffs objected, but also responded as follows:

*Denied:*

>*Counsel for MST protested that the crewmembers were being deprived of their liberty by the Government. See Declaration of George M. Chalos ¶¶ 4-6 and Exhibit A.*

In addition to those governmental assertions and plaintiff responses, several of Plaintiffs' Additional Statement of Material Fact explained, citing Mr. Merrill's detailed declaration, that the government routinely employs its form Agreement on Security to create the false impression of seafarer consent. For example, paragraph 41 of Plaintiffs' Additional Statement of Material Facts ("ASMF") cites Mr. Merrill's declaration for the proposition that "the Government's treatment of Plaintiffs followed a pattern in APPS/OWS cases whereby U.S. officials force shipowners to leave crewmembers behind, refuse to communicate with those crewmen or their counsel concerning these turnover arrangements, enter into "agreements on security" without involving any of the crew, and then knowingly misrepresent that the crew somehow consented to their seizure."

The following paragraph (ASMF ¶ 42) cited five paragraphs of Mr. Merrill's declaration to support the proposition that "Government officials involved in APPS/OWS cases routinely draft "agreements on security" to try to make it appear that the vessel owner is somehow authorized to represent the interests of the crew members even when (as here) they know the crewmen have counsel; they know this is not true."

In all, Mr. Merrill's Declaration detailing his personal experience was cited in the plaintiffs' responses to paragraphs 65, 66, 68, 69, 70, 71, and 89 of the defendant's Statement of Facts and in support of the plaintiffs' additional assertions numbered 32, 41, 42, 50, 59, 62, 79, 83 and 84.

Plaintiffs' additional statements of fact further documented that those practices were followed in the government's dealings with respect to these plaintiffs. Additional statements 43 and 44 cited Mr. Chalos's Declaration and attached email for the propositions that MST did not

4

represent that the plaintiffs had agreed to disembark.  Instead, his declaration and email document that he told the government it "interfered with [their] rights and liberties" and "is detaining these men."  His email, which no government official apparently refuted, cautioned the government, "please do not go to court and argue that they are in Portland voluntarily.  It is not true."  Plaintiffs' additional statements 45 and 46 cite the plaintiffs' declarations for the proposition that they did not authorize MST to negotiate for them, that only their lawyer was authorized to do so, and that the government "refused to negotiate with [plaintiffs' counsel]."

Executed in Portland, Maine, this 23rd day of November 2022.

/s/ Edward S. MacColl
Edward S. MacColl

/s/ Marshall J. Tinkle
Marshall J. Tinkle
Attorneys for Plaintiffs

THOMPSON, MACCOLL & BASS, LLC, P.A.
15 Monument Square, 4th Floor
P.O. Box 447
Portland, ME  04112-0447
(207) 774-7600

CERTIFICATE OF SERVICE

I certify that, on the above date, I made due service of the above document by electronically filing the same using the Court's EM/ECF system.

/s/Edward S. MacColl