# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JAROSLAV HORNOF, *et al.*, ) | |
| ) | |
|    *Plaintiffs,* ) | |
| ) | |
| v. ) | No. 2:19-CV-198-JDL |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
|    *Defendant.* ) | |

## UNITED STATES' MEMORANDUM OF LAW

On March 10, 2023, the Court directed the parties to submit memoranda of law in response to two questions:

(1) Does 8 U.S.C. § 1252(a)(2)(B)(ii) bar judicial review of the decisions to: (a) revoke the D-1 shore passes of Plaintiffs Hornof and Kordic, (b) revoke the D-2 shore pass of Plaintiff Zak, and (c) remand the Plaintiffs to the vessel?

(2) Was revocation of Plaintiffs' shore passes an immigration enforcement-related action, separate from the subsequent detention onboard the vessel, that has no analogous private person liability, and is not, therefore, actionable under the Federal Tort Claims Act? *See*, *e.g*., *Caban v. United States*, 728 F.2d 68 (2d Cir. 1984); *Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988); *Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012).

ECF No. 185 (Order).

For reasons detailed below, the United States respectfully submits (1) that 8 U.S.C. § 1252(a)(2)(B)(ii) does, indeed, bar judicial review, and (2) that revocation of the shore passes was an immigration enforcement-related action without a private party analogue, such that its alleged violation is not actionable under the Federal Tort Claims Act (FTCA).

## Background

To recap, on July 7, 2017, U.S. Customs and Border Protection (CBP) officials boarded the *Marguerita* and granted many of the crew, including Plaintiffs, landing privileges via CBP

Form I-95s, known as shore passes or landing permits. Plaintiffs Hornof and Kordic were issued D-1 landing permits, which authorize temporary shore leave for crewmembers expected to return to and depart with their vessel. Plaintiff Zak, whose contract with MST was drawing to a close, received a D-2 landing permit, which allows a foreign crewmember to temporarily land for the purpose of leaving the country on a different vessel or via other means of transportation, such as by air. When advised by the U.S. Coast Guard that the vessel and certain of her crew were under investigation for potential violations of federal law, CBP placed a customs hold on the vessel and its crew, revoked the previously issued landing permits, and remanded all crew members to the vessel, including Plaintiffs.

**Argument**

I. **The Illegal Immigration Reform and Immigrant Responsibility Act Amended the Immigration and Nationality Act, Barring Judicial Review of the Decision to Revoke Plaintiffs' Shore Passes and Return Them to the *Marguerita***

   A.   **Constitutional and Statutory Backdrop**

The United States Constitution gives Congress broad power to regulate the jurisdiction of the lower courts, providing "[t]he judicial Power of the United States shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const., art. III, § 1. "Simply stated, Congress may impart as much or as little of the judicial power as it deems appropriate and the Judiciary may not thereafter on its own motion recur to the Article III storehouse for additional jurisdiction." *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 366 F. Supp. 51, 55 (D.D.C. 1973). "When it comes to jurisdiction of the federal courts, truly, to paraphrase the scripture, the Congress giveth, and the Congress taketh away." *Id*. (quoting *Job* 1:21).

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility

2

Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, which amended the Immigration and Nationality Act. This amendment restricted the power of federal courts to review, *inter alia*, "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ."[1]  8 U.S.C. § 1252(a)(2)(B)(ii). As the Supreme Court explained, "[p]rotection of the Executive's discretion from the courts . . . can fairly be said to be the theme of the legislation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999). The statute has been described by numerous courts as "jurisdiction-stripping legislation," meaning that Congress withdrew judicial authority to review certain types of executive action that relate to immigration.

The presumption of judicial review of agency action "may be overcome by specific language in a provision or evidence drawn from the statutory scheme as a whole." *Patel v. Garland*, 142 S. Ct. 1614, 1627 (2022) (internal quotations omitted). Here, the IIRIRA provision at issue, 8 U.S.C. § 1252(a)(2)(B)(ii), "withdraws judicial review from decisions 'the authority for which is specified . . . to be in the discretion of the . . . Secretary of Homeland Security.'"[2] *Bernardo v. Johnson*, 814 F.3d 481, 484 (1st Cir. 2016) (quoting § 1252(a)(2)(B)(ii)).

---

[1] The statute was passed in 1996, the Department of Homeland Security came into existence in late 2002, and the reference to the Secretary of Homeland Security was added in 2005. *See* PL 109-13, 119 Stat. 305.

[2] The pertinent language states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, *no court shall have jurisdiction to review . . . any . . . decision or action of the* Attorney General or the *Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney*

3

In interpreting Section 1252(a)(2)(B)(ii), the Supreme Court has found that "Congress barred court review of discretionary decisions only when Congress itself set out the [Secretary's] discretionary authority in the statute." *Kucana v. Holder*, 558 U.S. 233, 247 (2010). The focus thus falls not on the regulation, 8 C.F.R. § 252, but on the statute, 8 U.S.C. § 1282. Here, Congress has spoken. The authority described by the statute is discretionary in nature, providing unequivocally that "an immigration officer . . . *may*, *in his discretion*, grant the crewman a conditional permit to land temporarily . . . ." 8 U.S.C. § 1282. In greater part, it states:

> **(a) Period of time**
>
> No alien crewman shall be permitted to land temporarily in the United States except as provided in this section and sections 1182(d)(3), (5) and 1283 of this title. *If an immigration officer finds upon examination that an alien crewman is a nonimmigrant* under paragraph (15)(D) of section 1101(a) of this title *and is otherwise admissible and has agreed to accept such permit, he may, in his discretion, grant the crewman a conditional permit to land temporarily* pursuant to regulations prescribed by the Attorney General, *subject to revocation in subsequent proceedings as provided in subsection (b)*, and for a period of time, in any event, not to exceed—
>
> (1) the period of time (not exceeding twenty-nine days) during which the vessel or aircraft on which he arrived remains in port, if the immigration officer is satisfied that the crewman intends to depart on the vessel or aircraft on which he arrived;
>
> (2) twenty-nine days, if the immigration officer is satisfied that the crewman intends to depart, within the period for which he is permitted to land, on a vessel or aircraft other than the one on which he arrived; or
>
> \* \* \*
>
> **(b) Revocation; expenses of detention**
>
> Pursuant to regulations prescribed by the Attorney General, *any immigration officer may, in his discretion, if he determines that an alien is not a bona fide crewman*, or

---

*General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. 1252(a)(2)(B)(ii) (emphasis added).

> does not intend to depart on the vessel or aircraft which brought him, *revoke the conditional permit to land which was granted such crewman under the provisions of subsection (a)(1), take such crewman into custody, and require the master or commanding officer of the vessel or aircraft on which the crewman arrived to receive and detain him on board such vessel* or aircraft, *if practicable, and such crewman shall be removed from the United States at the expense of the transportation line which brought him to the United States. Until such alien is so removed, any expenses of his detention shall be borne by such transportation company*. . . .

8 U.S.C. § 1282.

### B. Revocation of Plaintiffs' Shore Passes and Their Return to the *Marguerita*

The case for barring judicial review is strong. On making certain findings, "an immigration officer . . . *may*, *in his discretion*, grant the crewman a conditional permit to land temporarily . . . ." 8 U.S.C. § 1282(a) (emphasis added). Where both D-1 and D-2 permits are concerned, the broad "in his discretion" language at Section 1282(a) is sufficient to find that Section 1252(a)(2)(B)(ii) applies to and precludes review of the decision to grant *and* revoke Plaintiffs' landing permits.

Without diminishing the broad discretion to revoke D-2 shore passes, Section 1282(b) goes on to give immigration officials explicit authority to apply under a particular set of circumstances involving D-1 shore passes. Section 1252(a)(2)(B)(ii) similarly applies to and precludes review of the exercise of this more explicit authority.

#### 1. D-1 Shore Passes

When an immigration officer finds an alien crewman (1) to be a nonimmigrant, (2) to be otherwise admissible, and (3) to have agreed to accept a conditional permit to land temporarily (*i.e.*, shore pass), the official may as a matter of discretion issue a landing permit. 8 U.S.C. § 1282(a). Permits granted under subsection (a)(1) (*i.e.*, D-1 permits) are subject to revocation under Section 1282(b) if the immigration officer, in her discretion, determines that the alien is not

5

a *bona fide* crewman or intends to abscond.[3]  *Id*. § 1282(b) (discussing "the conditional permit to land which was granted such crewman under the provisions of subsection (a)(1)"). *See*, *e.g*., *Dimitrijevski v. U.S. Atty. Gen*., 363 F. App'x 710, 714 (11th Cir. 2010) ("[A]n alien crewman who is not granted relief in an asylum-only proceeding may be removed without further proceedings.") (citing 8 U.S.C. § 1282(b)).  When a landing permit is revoked, the crewman is remanded to the custody of the master of the vessel on which the crewman arrived, who must keep him on board until he leaves the United States at the expense of the transportation line that brought him here.  *Id*.  Plaintiffs Hornof and Kordic were issued D-1 landing permits.  Plainly, 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of the decisions to revoke their D-1 shore passes.

### 2. D-2 Shore Passes

Subsection (b) of Section 1282 does not explicitly address the revocation of landing permits issued under subsection (a)(2) (*i.e.*, D-2 permits), the type that Plaintiff Zak received.  The mere fact that § 1282(b) more specifically informs the process of revoking D-1 permits does not, however, render D-2 permits irrevocable.  As previously stated, where temporary shore passes are concerned, an immigration officer "may, in his discretion, grant a conditional permit to land temporarily." 8 U.S.C. § 1282(a).  This broad language is sufficient to find that § 1252(a)(2)(B)(ii) applies to and precludes review of the decision to grant *and* revoke a D-2 permit, as Congress has imposed no "standard[s] that meaningfully curtail[] the Secretary's discretion" sufficient to sustain judicial review. *Bernardo*, 814 F.3d at 487.  Judicial review of administrative action can be

---

[3] Generally, enumerated categories of revocability are not intended to be exclusive. *See United States ex rel. Stellas v. Esperdy*, 366 F.2d 266, 269 (2d Cir. 1966) ("*categories of revocability are not intended to be exclusive*. Since under the statute, 8 U.S.C. § 1282, a permit is given each time the crewman arrives, and it is explicitly within the discretion of the immigration officer to grant a permit, he has discretion to revoke the 'permanent type landing permit' on any entry of the crewman.") (emphasis added).

overcome by specific language that reliably conveys congressional intent. *See Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 485 (1st Cir. 2016). Section 1282 at subsection (a) does exactly that by vesting authority to grant or deny landing permits in immigration officers.

Such a reading comports with the Ninth Circuit's determination in *Bao Tai Nian v. Holder*, 683 F.3d 1227 (9th Cir. 2012). Bao was a crew member aboard a fishing vessel boarded by the Coast Guard near San Diego. Over 150 Chinese nationals were discovered on the ship, and certain members of the crew were arrested for alien smuggling. Like plaintiffs in this case, Bao was a material witness in a federal prosecution. Apart from his asylum proceeding, the Ninth Circuit declined to consider his petition for review. It did so because "[a]n alien crew member who lands in the United States without authorization or whose authorization is revoked is not entitled to a hearing and is statutorily required to be 'removed from the United States at the expense of the transportation line which brought him.'" *Bao Tai Nian v. Holder*, 683 F.3d 1227, 1230 (9th Cir. 2012) (citing 8 U.S.C. § 1282(b), *id.* § 1284(c), 8 C.F.R. § 252.2(b)). It found that "Bao is already removable, pending only the result of his 'asylum-only' proceedings. Once he is denied any relief, Bao can be removed by "any immigration officer." *Id.* (citing 8 U.S.C. § 1282(b)).

To interpret Section 1282 any differently would mean an alien crewmember armed with a shore pass can evade accountability for himself or on others' behalf, whether for pollution, recordkeeping or marine safety violations, drug smuggling, human trafficking, or any federal crime. Nothing in the text or legislative history of 8 U.S.C. § 1282 suggests that Congress intended such a narrow interpretation, which would undercut the "wide discretion" vested in "immigration authorities as to the issuance and revocation of [landing] permits." *Savelis v. Vlachos*, 248 F.2d 729, 730 n.1 (4th Cir. 1957). On application of Section 1252(a)(2)(B)(ii), the existence of discretion on the part of immigration officers renders the revocation of all three Plaintiffs' landing

7

permits, and by extension their return to the vessel, non-reviewable.

In sum, under 8 U.S.C. § 1282(a) an immigration officer's decision to grant a conditional landing permit is entirely discretionary. As such, 8 U.S.C. § 1252(a)(2)(B)(ii) also bars judicial review of the decisions to revoke Plaintiffs' shore passes and to remand them to the *Marguerita*.

**II.     Even If Plaintiffs' Suit Is Not Barred by the Immigration and Nationality Act, It Fails Under the Federal Tort Claims Act, Because Revocation of Plaintiffs' Shore Passes Was an Immigration Enforcement-Related Action Without a Private Party Analogue**

The FTCA provides a limited waiver of sovereign immunity and creates a federal cause of action, which allows claims for certain torts caused by federal employees acting within the scope of employment. Subject to specified exceptions, the statute subjects the United States to liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see id*. § 2674 (making the United States liable in tort "to the same extent as a private individual under like circumstances").

Where the revocation of Plaintiffs' shore passes is concerned, Maine law cannot possibly impose a duty of care on a private party, because no private person is empowered to regulate ingress at our Nation's borders. In the words of the *Caban II* court, "immigration officers are accorded a special status by law." *Caban v. United States*, 728 F.2d 68, 74 (2d Cir. 1984). That special status in this case gave CBP officials plenary authority to grant and then revoke shore passes. Just as the court in *Akutowicz v United States*, 859 F.2d 1122, 1125-25 (2d Cir. 1988) held that "that the withdrawal of a person's citizenship constitutes a quasi-judicial action for which no private analog[ue] exists," the same can fairly be said of revoking a shore pass, which effectively returns a crew member from our shore to his ship.

Finally, although the government keenly appreciates that the court in *Liranzo v. United*

8

*States*, 690 F.3d 78 (2d 2012), urged those who follow precedent to look hard to find a private analogue, in the government's estimation, there is none pertinent to issuing or revoking shore passes. Just as the *Liranzo* court described "citizenship [as] a legal status, which only the federal government is capable of altering," 690 F.3d at 96, the federal government alone regulates entry at the United States' borders. *Cf. Avalos-Palma v. United States*, 2014 WL 3524758 (D.N.J. July 16, 2014) (finding that "the act of ejectment or preventing re-entry . . . lacks a private party analogue").

In sum, immigration law is uniquely federal, and Congress, having plenary power over immigration law, authorized agents of the Department of Homeland Security to grant and revoke shore passes, among other immigration benefits. *See* 8 U.S.C. § 1282. As acknowledged in *Caban*, *supra*, CBP (like its predecessor, the Immigration and Naturalization Service) is obliged to protect our Nation's borders. Here, CBP acted in conformance with federal standards regarding the treatment of crewmen at our sea ports of entry. Accordingly, because Plaintiffs have "not stated a cause of action cognizable against a private party, [they] cannot maintain this action against the government under the FTCA." *Akutowicz*, 859 F.2d at 1125.

## Conclusion

Based on the foregoing, the United States respectfully submits that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review and that revocation of the shore passes was an immigration enforcement-related action without a private party analogue, such that its violation, if any, is not actionable under the FTCA.

Dated: March 31, 2023

                                              Respectfully submitted,

                                              BRIAN M. BOYNTON
                                              Principal Deputy Assistant Attorney General

DARCIE N. McELWEE
United States Attorney

JOHN G. OSBORN
Assistant United States Attorney
United States Attorney's Office
District of Maine
100 Middle Street
East Tower, 6th Floor
Portland, Maine 04101
(207) 780-3257
john.osborn2@usdoj.gov

*/s/ Michael A. DiLauro*
MICHAEL A. DiLAURO
Senior Admiralty Counsel
KALYNN E. HUGHES
Trial Attorney
MALINDA R. LAWRENCE
Trial Attorney
Aviation & Admiralty Litigation
Torts Branch, Civil Division
U.S. Department of Justice
(overnight courier)
175 N St., N.E., Ste. 8.1815
Washington, D.C. 20002
(mailing)
P.O. Box 14271
Washington D.C. 20044-4271
Telephone: (202) 616-4047/4060
Facsimile: (202) 616-4159
michael.dilauro@usdoj.gov
kalynn.e.hughes@usdoj.gov
malinda.r.lawrence@usdoj.gov
*Counsel for Defendant United States*